No. 13,521.

JOHN PAUL HECKER VS. MRS. ELIZABETH BROWN, WIDOW OF DANIEL
HOLDERITH.

### SYLLABUS.

In a suit to compel the defendant to accept the title offered to her by one who
was bound to transfer to her a good title, it appearing that the proceedings
which led to sales of minor's property were not conducted in accordance with
the requirements of law, in that the proceedings of a family meeting held
in the minors' interest were never homologated, and, in addition, that an
attempt was made *ex parte* to annul proceedings of a date anterior to the
holding of the family meeting that proved of no avail.

*Held :* That the order looking to the homologation of the proceedings of the
family meeting and to authorize the sale, not having been signed, left the
title in such a state that a third person could not be compelled to accept it
when tendered.    The order homologating a family meeting is not inter-
locutory and is not effective without a judgment of the court.  It is a final
judgment decreeing the disposition to be made of minors' property and must
be signed, particularly when it includes an additional order directing that a
sale to effect a partition be made.

**A** PPEAL from the Civil District Court, Parish of Orleans—*King,
J.*

*George G. Kronenberger* and *James Boyd Grinage* for Plaintiff and
Appellant.

*Joseph F. Walton* and *John A. Woodville* for Defendant and Appel-
lee.

The opinion of the court was delivered by

BREAUX, J.  This suit was brought to compel the defendant to accept
the title offered.  The property was sold by plaintiff to defendant on
the 22nd day of May, 1899, for the sum of $4550.00.

Plaintiff's author purchased this property from Mrs. E. C. McGraw
and her three minor children, named John Wilson McGraw, Lilian
Theresa McGraw, and Michael Edmund McGraw.  Mrs. McGraw's first
husband was Charles Stoll, Sr.

Beginning our review of the facts with a reference to the first title
attacked by the defendant, we find that the property, the title to which

is tendered to the defendant, was purchased during the existence of the community which was dissolved by the death of the first husband of Mrs. McGraw in 1876, who left two children, Charles Stoll, Jr., and Philomene Stoll, issue of her marriage with Charles Stoll, Sr. Charles Stoll, Jr., died in 1878, after the second marriage of his mother, Mrs. E. C. McGraw, to Michael R. McGraw, and after the birth of his brother of the half-blood, John Wilson McGraw; and Philomene Stoll died after the birth of her two brothers of the half-blood, John Wilson McGraw and Michael Edmund McGraw, and her sister of the half-blood, Lilian Theresa McGraw, all issue of the second marriage. We also find that Mrs. E. C. McGraw, survivor in community, after the second marriage, had the community property of the first marriage adjudicated to her at the price of appraisement in 1881. This adjudication was made after the death of Charles Stoll, Jr., issue of the first bed.

The defendant urges that the adjudication was irregular and illegal, for the reason that the evidence shows that Philomene Stoll and John Wilson McGraw were not represented in these proceedings as the law requires. In these proceedings, it appears that the minor, John Wilson McGraw, having no tutor, was represented by Charles Kirsch, who was appointed undertutor *ad hoc,* and Mrs. McGraw as tutrix and her husband as co-tutor represented Philomene Stoll. Philomene Stoll died on the third of July, 1882, leaving her interest in her property to her mother and minor brothers and sisters.

In the chain of title, we come to another transfer as shown by the record. Mrs. McGraw, averring her ownership in indivision with her three minor children, John Wilson McGraw, Lilian Theresa McGraw and Michael Edmund McGraw, in March, 1893, filed a petition in court in which she alleged that a partition should be made of the property, and, further, that her husband, Michael McGraw, being the guardian of their three children, and as their father, was authorized to represent them in the proceedings. That under Art. 222 C. C. it was necessary for her to obtain the authorization of the court to proceed against him in that capacity. She prayed for a partition to be made of the property of the succession of Charles Stoll, Jr., and of Philomene Stoll, both deceased; for an inventory to be made, and a family meeting to be called to advise regarding the interest of these minors, and touching a compromise to which some reference is made.

Her prayer was granted, and Charles Kirsch was appointed undertutor *ad hoc* of the minor, John Wilson McGraw; Jacob Betz undertutor *ad hoc* of the minor, Julian Theresa McGraw, and Paul Granger,

undertutor *ad hoc* of the minor, Michael Edmund McGraw. Michael R. McGraw alleged that he was guardian of his children, and joined Mrs. McGraw, his wife, in the proceedings. The family meeting was held, and, after referring to the legality of previous proceedings which had been questioned, they recommended a partition, and a sale of the property to that end, either at public or private sale in order to cure all defects in the title.

A motion was made by the parties in interest to have the proceedings of the family meeting homologated. The order accompanying the motion, written for the judge to sign, was never signed. On the margin of the page on which the order was written, only the initials of the judge are written. There is an entry in the minutes of the court setting forth that the family meeting was homologated, but there is no judgment in evidence, duly signed.

On the 27th day of May, 1893, the parties before named as owners, appeared before Frank Zengel, Notary Public, that is Mrs. Elizabeth C. Kirty, widow by first marriage of Charles Stoll, Sr., and by second marriage of Michael R. McGraw; Michael McGraw appearing as guardian of his minor children, John Wilson, Lilian Theresa, and Michael Edmund McGraw; Jacob Baltz, undertutor *ad hoc* of the minor, Lilian Theresa McGraw; Paul T. Granger, undertutor *ad hoc* of the minor, Michael Edmund McGraw, and Charles Kirsch, undertutor *ad hoc* of the minor John Wilson McGraw, and set forth at some length that the title, because of the irregularity of the proceedings before recited, and particularly because the minors had not been represented in the proceedings as the law requires, had been left in doubt, uncertainty and confusion, and with a view of putting an end to the uncertainty and confusion, they advised the annulment and cancellation of the adjudication to Mrs. McGraw and of all the proceedings connected with the adjudication.

On the 7th day of August following, Mrs. McGraw and her minor children, represented as heretofore mentioned, in other acts sold the property to John Joseph Hecker, who is plaintiff's vendor. Defendant also questions the regularity of this sale and the proceedings leading to it on a number of grounds.

The notary, in the deed, declares that a duly certified copy of the judgment is annexed, authorizing the sale to effect a partition, but no document is annexed at this time. We take up, in their inverse order, the points raised for review and decision.

The regularity of the sale by the McGraws to John Joseph Hecker,

dated August 7th, 1893, is the first in the order just stated requiring attention.

Plaintiff points to two orders of the court authorizing it in order to effect a partition, one signed and the other not signed, and as to the latter, if, as we take it, plaintiff contends, it is not signed as required, the want of signature is cured by the proceedings to which we will refer later. Now as relates to the order of May 4th, 1893, the plaintiff's insistance is that it is a formal judgment decreeing a partition of the property by licitation. We take it that it was not the intention directly to authorize a partition, for it orders the holding of a family meeting to recommend terms and conditions of the sale in so far as the minors are concerned. The order, without a family meeting, could not be of any effect. The recommendation of a family meeting is a necessary prerequisite. The language of the statute is plain enough. The partition is to be ordered on the advice of a family meeting duly convened. If the family meeting does not choose to recommend the sale, appraise the property, and fix the terms, the order of sale by the judge of an anterior date is without the support the law contemplates. In other words, it would be to order property to be sold at private sale before any recommendation had been made by a family meeting. Moreover, the *proces verbal* of the notary sets forth that the family meeting was held under another order dated March 24th, 1893, in which no mention is made of a partition by licitation, save such as the family meeting might recommend. In any event, considered from any point of view, the recommendations of the family meeting must be homologated in order for it to have legal effect. We have noted that it was not regularly homologated. The order of homologation was never signed. The initials to which we have before referred are not the signature to be looked to in proceedings having in view the disposition of minor's property. Homologation is a confirmation, an approval. "To homologate is to say the like, *similiter dicere,*" Without it, the recommendations of a family meeting are wanting in legal effect.

We are equally as convinced that the order of homologation has never been held as an interlocutory order which is effective without the signature of the court. Interlocutory decrees, in the course of judicial proceedings, need not be signed. This does not include orders of the court homologating the proceedings of a family meeting of which a record must be kept. The judgment by the court of original jurisdiction is final and directs in a final manner the steps to be taken to dis-

pose of the property. Final judgment, in the order of things, cannot have effect without an order duly signed by the judge.

Having arrived at the conclusion that the order authorizing the sale and partition, not having been signed, is an irregularity sufficiently serious to affect the title to the property, we will not pass upon the other irregularities urged by the defendant.

For the reasons assigned, the judgment appealed from is affirmed.

Rehearing refused.